**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| HYUNDAI CORPORATION, (USA), | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-07-2625 |
| | § | |
| CONTRACTORS CARGO CO., *et al.,* | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

This is a cargo damage suit.  Hyundai Corporation, (USA) contracted with Contractors

Cargo Company for the interstate transport of three transformers and accessories from

Houston, Texas to Muscatine, Iowa.  The contract between Hyundai and Contractors Cargo

contained a provision limiting liability if the cargo was damaged during shipment.

Contractors Cargo subcontracted with other carriers to transport the transformers.  Hyundai

alleges that one transformer was damaged during shipment and seeks $499,255.80 in

damages.  The carrier that transported that transformer, Space City Hot Shot, Inc., has moved

for partial summary judgment, arguing that its liability is limited by the Carmack

Amendment to the Interstate Commerce Act, 49 U.S.C. § 4706(c)(1)(A), and the liability

limitation clause in the Hyundai/Contractors Cargo contract.  (Docket Entry No. 37).

Hyundai responded that Space City is not entitled to benefit from the limitation of liability

clause in the Contractors Cargo contract.  (Docket Entry No. 39).  Space City replied to

Hyundai's opposition to the partial summary judgment motion.  (Docket Entry No. 40).

After careful review of the motion, response, and reply; the record; and the applicable law, this court finds that based on the undisputed facts, Space City is entitled to partial summary judgment as a matter of law.  The reasons are explained in detail below.

## I.  Background

The facts relevant to determining whether Space City is entitled to the limitation of liability provision in the Hyundai/Contractors Cargo contract are undisputed.  The summary judgment evidence includes the following: a copy of that contract;[1] a December 20, 2006 e-mail from Hyundai to Contractors Cargo;[2] Space City's U.S. Department of Transportation Certificate;[3] a Contractors Cargo carrier alert issued to Space City;[4] Space City's bill of lading;[5] Space City's invoice to Contractors Cargo;[6] Contractors Cargo's invoice to Hyundai;[7] a claim adjustment form issued by Hyundai's insurer;[8] Masters Freight Line Inc.'s bill of lading for the transformer's shipment from Masan, Korea to Houston, Texas;[9] the

---

[1] (Docket Entry No. 37, Ex. A).

[2] (Docket Entry No. 39, Ex. E).

[3] (*Id.*, Ex. D).

[4] (Docket Entry No. 37, Ex. C).

[5] (*Id.*).

[6] (*Id.*, Ex. H).

[7] (*Id.*, Ex. G).

[8] (*Id.*, Ex. E).

[9] (Docket Entry No. 37, Ex. F).

NAMS-CMS Report of Preliminary Damage Survey;[10] and excerpts of the depositions of

Frank Eichen,[11] accounting manager of Contractors Cargo, Robert A. Thomas,[12] president

of Space City, and Fred Garcia,[13] employee-driver of Space City.

In November 2006, Hyundai asked Contractors Cargo to provide a quote for carriage

and delivery of two 112,000-pound transformers and one 87,500-pound transformer from

Houston, Texas to Muscatine, Iowa. This was not the first transaction between the two

companies. Hyundai had used Contractors Cargo's services for years, and Contractors Cargo

had previously transported similar transformers for Hyundai. (Docket Entry No. 37, Ex. B,

Deposition of Frank Eichen at 17:22-18:14).

In response to Hyundai's request, Contractors Cargo sent a proposed contract with the

prices for transporting the three transformers, along with standard terms and conditions of

carriage and delivery. (Docket Entry No. 37, Ex. A; Ex. B, Deposition of Frank Eichen at

25:6-19). One of Contractors Cargo's standard terms and conditions is a provision stating

as follows:

> Contractor Cargo Company's liability for loss of or damage to
> freight in Contractors Cargo Company's possession shall be

---

[10] (Docket Entry No. 39, Ex. K).

[11] (Docket Entry No. 37, Ex. B).

[12] (Docket Entry No. 39, Ex. B).

[13] (*Id.*, Ex. C).

subject to release value[14] of $2.50 per pound to a maximum of
$100,000 per load as provided in Tariff ICC – CCC 400, unless
a greater amount is declared and accepted, in writing, by
Contractors Cargo Company and Customer has paid the cost of
excess valuation.

(Docket Entry No. 37, Ex. A).  On December 20, 2006, S.H. Pack, Hyundai's president,

signed the contract and returned it to Contractors Cargo's sales representative, Bob Tarver.

(Docket Entry No. 37, Ex. G).  Hyundai never declared a higher value for the transformers.

(Docket Entry No. 37, Ex. B, Deposition of Frank Eichen at 83:9-25).  Hyundai did obtain

coverage from Pacific Insurance & Maritime Services to protect against damage to the

transformers during shipment.  (Docket Entry No. 37, Ex. E).  This case appears to be

pursued by the insurer asserting its subrogation right.

Contractors Cargo subcontracted with three separate independent trucking companies

to carry the transformers to Iowa.  (Docket Entry No. 39, Ex. A, Deposition of Frank Eichen

at 19-21).  On January 23, 2007, Contractors Cargo sent Space City a "carrier alert" that the

transformer was ready for pick up at the Port of Houston.  (Docket Entry No. 37, Ex. C).

Robert Thomas, president of Space City, and Fred Garcia, an employee-driver, were at the

Port of Houston when the transformer at issue was discharged.  Garcia drove the trailer

carrying the transformer to Iowa over a three-day period, arriving on January 26, 2007.

Thomas escorted the trailer in a pick-up truck.  (Docket Entry No. 39, Ex. B, Deposition of

Robert Thomas at 42-43, 45, 53).  Garcia delivered the transformer to Hyundai's receiving

---

[14] The "release value" of an item is the declared value, or the value at which the shipper releases it
to the carrier. *Nat'l Small Shipments Traffic Conf. v. United States*, 887 F.2d 443, 444 (3d Cir. 1989).

company in Iowa, where a representative of the receiving company signed the Space City

waybill.  (Docket Entry No. 37, Ex. D).  Photographs taken in Muscatine before the

transformer was unloaded from Space City's trailer show physical damage to the top.

(Docket Entry No. 39, Ex. K at 38-40).  Hyundai's insurance carrier hired an inspector, who

conducted a test using an "Impact-O-Graph" shock meter.  The test showed that the

transformer had sustained one clear impact on the morning of January 25, 2007.  (Docket

Entry No. 39, Ex. K at 3).  Hyundai seeks $482,987.67 in repair costs and $16,268.13 in

incidental damages.  Space City moves for partial summary judgment on damages, asserting

that it is entitled to the limitation of liability under the provision in the contract between

Hyundai and Contractors Cargo.

## II.     The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the

moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56.  Under Rule

56(c), the moving party bears the initial burden of "informing the district court of the basis

for its motion, and identifying those portions of [the record] which it believes demonstrate

the absence of a genuine issue of material fact."  *Celotex Corp. v. Citrate*,  477 U.S. 317, 322

(1986); *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002).  If the burden

of proof at trial lies with the nonmoving party, the movant may either (1) submit evidentiary

documents that negate the existence of some material element of the opponent's claim or

defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden

of proof at trial, demonstrate the evidence in the record insufficiently supports an essential

element or claim. *Celotex*, 477 U.S. at 330. The party moving for summary judgment must

demonstrate the absence of a genuine issue of material fact, but need not negate the elements

of the nonmovant's case. *Bourdeaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir.

2005). "An issue is material if its resolution could affect the outcome of the action." *Weeks*

*Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003) (citing *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). If the

moving party fails to meet its initial burden, the motion for summary judgment must be

denied, regardless of the nonmovant's response. *Baton Rouge Oil & Chem. Workers Union*

*v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot

survive a motion for summary judgment by resting on the mere allegations of its pleadings.

The nonmovant must identify specific evidence in the record and articulate the manner in

which that evidence supports that party's claim. *Johnson v. Deep E. Texas Reg'l Narcotics*

*Trafficking Task Force,* 379 F.3d 293, 305 (5th Cir. 2004). The nonmovant must do more

than show that there is some metaphysical doubt as to the material facts. *Armstrong v. Am.*

*Home Shield Corp.,* 333 F.3d 566, 568 (5th Cir. 2003). In deciding a summary judgment

motion, the court draws all reasonable inferences in the light most favorable to the

nonmoving party. *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002);

*Anderson*, 477 U.S. at 255.

## III.    Analysis

Space City asserts that its liability, if any, is limited to $100,000 because Contractors

Cargo complied with the Carmack Amendment requirements to limit liability and the

liability-limiting provision in the Hyundai/Contractors Cargo contract extends to Space City.

Hyundai claims that neither Contractors Cargo nor Space City is entitled to limited liability

because neither company issued a bill of lading or receipt before shipment, as required by

the Carmack Amendment.  Hyundai also claims that the liability limitation does not extend

to Space City because the clause does not address the liability of any party other than

Contractors Cargo and is limited to freight in Contractors Cargo's possession.

### A.      Issuance of a Bill of Lading or Receipt Before Shipment

In 1906, Congress enacted the Carmack Amendment as part of the former Interstate

Commerce Act.  The Amendment, now found at 49 U.S.C. § 11706, created a national

scheme to compensate shippers for goods damaged or lost during interstate shipping.  *See*

*New York, New Haven & Hartford R.R. v. Nothnagle*, 346 U.S. 128, 131 (1958).  The

Carmack Amendment subjects a "carrier transporting cargo in interstate commerce to

absolute liability for actual loss or injury to property."  *Hughes Aircraft Co. v. N. Am. Van*

*Lines, Inc.*, 970 F.2d 609, 611 (9th Cir. 1992).  Congress forbade carriers to limit their

liability to shippers for lost or damaged goods.  *Rohner Gerig Co. v. Tri-State Motor Transit*,

950 F.2d 1079, 1083 (5th Cir. 1992).  As a result of this prohibition, carriers increased

shipping rates.  Congress reacted by enacting the Cummings Amendment, which allowed a

carrier to limit liability if it complied with certain tariff requirements.  (*Id.*).  The law states:

> a carrier providing transportation or service . . .  may, subject to
> the provisions of this chapter  .  .  .  establish rates for the
> transportation of property . . . under which the liability of the

carrier for such property is limited to a value established by written or electronic declaration of the shipper or by written agreement between the carrier and shipper if that value would be reasonable under the circumstances surrounding the transportation.

49 U.S.C. § 14706(c)(1)(A).

Under the statute and case law, a carrier may limit liability if it: (1) maintains a tariff within the prescribed guidelines of the Interstate Commerce Commission (now the Surface Transportation Board); (2) obtains the shipper's agreement as to its choice of liability; (3) gives the shipper a reasonable opportunity to choose between two or more levels of liability; and (4) issues a receipt or bill of lading before moving the shipment. *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 778 (5th Cir. 2003) (citing *Rohner*, 950 F.2d at 1081).

In opposing Space City's partial summary judgment motion, Hyundai did not dispute the first three elements of the *Hoskins* test.  Hyundai did dispute that either Space City or Contractors Cargo issued a bill of lading or receipt before moving the transformer.  (Docket Entry No. 39 at ¶ 21).  Hyundai submitted the Space City waybill signed by Hyundai's receiving company on January 26, 2007, the day the transformer was delivered in Iowa. (Docket Entry No. 39, Ex. I).  In response, Space City urged that the contract between Hyundai and Contractors Cargo constituted a receipt issued before shipment because it was an agreement on the salient terms of a bill of lading.  Space City argued that when, as here, the shipper and carrier have a history of contracting on the same terms, the contract between them may manifest the shipper's consent to the terms of a bill of lading even if the bill of lading is not issued until after shipment.

8

Courts have held that the fourth requirement—that a carrier must issue a bill of lading or receipt before moving the cargo—may be satisfied by an agreement as to the salient terms of the contract of carriage before shipment.  In *Hoskins*, 343 F.3d at 779-80, the court held that an interstate order for service was a receipt issued before shipment.  In *Toppan Photomasks, Inc. v. North American Van Lines, Inc.*, No. H-05-3201, 2007 WL 173904 at *2 (S.D. Tex. Jan. 19, 2007), the court rejected the argument that the carrier was not entitled to limited liability because it did not issue a bill of lading before shipment.  *Id.*  The court found that all salient terms of the bill of lading were agreed to before shipment because a pricing agreement and rate schedule had been in place between the parties for years.  *Id.*  It was not relevant that the carrier issued the bill of lading after transport because the shipper manifested assent to the terms of the bill before the shipment began.  *Id.*

In this case, Hyundai signed a contract with Contractors Cargo before shipment. (Docket Entry No. 37, Ex. A).  The contract described the transformers and accessories to be shipped and listed the price for transporting each 112,000 pound transformer as $19,231.00.  This price was "[s]ubject to the attached terms and conditions."  (*Id.*).  The limited liability clause followed.  (Docket Entry No. 37, Ex. A).  This same clause was also found on the second sheet containing Contractors Cargo's standard terms and conditions. (*Id.* at 2).  The terms and conditions sheet stated that "[f]inal pricing is based on the terms and conditions listed below. In the event any of these are not applicable and require any changes, please contact us for possible price revisions."  (*Id.*).

The contract between Hyundai and Contractors Cargo was an agreement to the salient

terms of the bill of lading and constitutes a receipt issued before shipment.  Hyundai

manifested its assent to these terms by signing the contract on December 20, 2006.  Before

this shipment, Hyundai had used Contractors Cargo to ship multiple transformers over a

number of years, using the same standard terms and conditions.  (Docket Entry No. 37, Ex.

B, Deposition of Frank Eichen at 17:22-18:14).  Hyundai knew of Contractors Cargo's

standard terms and conditions, including the limited liability clause.  Hyundai knew that it

could have requested a higher valuation for liability in exchange for a higher shipping rate,

but it made no such request.  Instead, Hyundai procured insurance against damage to the

transformers during shipment.  (Docket Entry No. 37, Ex. E).  The decision to obtain separate

insurance "in and of itself demonstrates . . . a conscious decision not to opt out of the liability

limitation." *Read-Rite Corp. v. Burlington Air Express, Ltd.*, 186 F.3d 1190, 1198 (9th Cir.

1999) (quoting *Vision Air Flight Service v. M/V National Pride*, 155 F.3d 1165, 1169 (9th

Cir. 1998).

Contractors Cargo complied with the requirements to limit its liability under the

Carmack Amendment.

### B.      Extending the Limitation of Liability to Space City

Hyundai argues that the contract terms should be strictly construed against Contractors

Cargo to find that the liability limitation did not extend to either it or its subcontractor, Space

City.  *Rohner*, 950 F.2d at 1081 (stating that the terms of a bill of lading will be strictly

construed against the carrier).  Hyundai points to several clauses from Contractors Cargo's

terms and conditions sheet, including the following:

> Contractors Cargo will be responsible for all permits and clearances on public highways leading to the job site. Delivery shall be by trucks under their own power.
>
> . . . .
>
> Contractors Cargo Company's liability for loss of or damage to freight in Contractors Cargo Company's possession shall be subject to release value of $2.50 per pound to a maximum of $100,000 per load.

(Docket Entry No. 39, Ex. F).  According to Hyundai, strictly construing these provisions leads to the conclusion that Contractors Cargo's liability is only limited for freight in its possession.  Because Contractors Cargo did not have possession of the transformers, Hyundai maintains, neither it nor Space City is entitled to limited liability.

Hyundai cites several cases stating that liability-limitation provisions are strictly construed against the carrier.  *See Carmana Designs Ltd. v. North American Van Lines, Inc.*, 943 F.2d 316, 322 (3d Cir. 1991) (finding that because bill of lading was ambiguous as to cargo's weight, shipper was not limited to recovering release value but was entitled to actual loss); *EF Operating Corp. v. American Buildings*, 993 F.2d 1046, 1050 (3d Cir. 1993) (when a bill of lading referenced other documents indicating that freight charges were prepaid, carrier could not recover these charges from consignee); *Fireman's Fun McGee v. Landstar Ranger, Inc.*, 250 F.Supp.2d 684, 690 (S.D. Tex. 2003) (construing ambiguous notice term in bill of lading against carrier); *First Nat. Bank & Trust Co. of Newton v. Consolidated Freightways*, 797 F.Supp. 1262, 1270 (E.D. Pa. 1992) (finding that a flat rate did not offer shipper a choice of levels of liability, so carrier did not effectively limit liability).  The cases Hyundai cites are inapposite.  In these cases, either the carrier failed to meet one of the four

11

*Hoskins* requirements to limit liability or the bill of lading terms were ambiguous, triggering the general rule of construction that ambiguous contracts are to be construed against the drafter.  Here, Contractors Cargo fulfilled the requirements for limiting the carrier's liability for the property to the stated value.

Space City argues that it is covered by the liability limitation provision in the Hyundai/Contractors Cargo contract because Contractors Cargo retained Space City as a subcontractor to fulfill the delivery agreement with Hyundai.

Under the Carmack Amendment, a limitation-of-carrier-liability provision in the contract of carriage generally extends to the carrier's subcontractor.  *See Conti-Harding v. Eden Relocation*, No. 06-27, 2007 WL 1136092 (E.D. Tex. Apr. 16, 2007); *Dictor v. David & Simon, Inc.*, 106 Cal. App.4th 238, 130 Cal. Rptr.2d 588 (Cal. Ct. App. 2003).

In *Conti-Harding*, the plaintiff contracted with United Express Moving Systems to transport her household goods from California to Texas.  2007 WL 1136092 at *1.  Eden Relocation, a subcontractor that transported the plaintiff's belongings, claimed that its liability was limited by the bill of lading.  *Id.* at *2.  The court drew support from cases applying the Warsaw Convention's limitations on airline liability and extending these limits to airline employees and agents, independent contractors, and subcontractors whenever these individuals or entities perform services in furtherance of the contract of carriage.  *See Reed v. Wiser*, 555 F.2d 1079, 1092 (2d Cir. 1977) (employees and agents); *McCaskey v. Continental Airlines, Inc.*, 159 F.Supp.2d 562, 579 (S.D. Tex. 2001) (independent contractors); *Waxman v. C.I.S. Mexicana de Aviacion, S.A. de C.V.*, 13 F.Supp.2d 508, 515

12

(S.D.N.Y. 1998) (subcontractors).  The court in *Conti-Harding* concluded that "agents and subcontractors of the principal carrier named on a bill of lading are similarly protected from liability to the extent allowed in the bill of lading."  *Id.*  The court in *Dictor* also relied on Warsaw Convention cases to hold that under the Carmack Amendment, "[a] third party is protected by the limitation of liability if, at the time of the loss, the party was performing services incidental to the carriage."  106 Cal.App.4th at 255; *see also U.S. Xpress, Inc. v. Great Northern Ins. Co.*, No. 01195, 2002 WL 31433274 at *2 (D. Minn. Oct. 25, 2002) (concluding that an express limitation of the carrier's liability extended to a subcontractor under the Carmack Amendment).

These cases emphasize the purposes of limiting carriers' liability and extending that limitation to carriers' subcontractors.  Limiting carrier liability under the Warsaw Convention was intended not only to lessen litigation but to "aid in the development of international air transportation, as such limitation will afford the carrier a more definite basis on which to obtain insurance rates, with the probable result that" operating expenses and thus transportation rates would be reduced.  *Reed*, 555 F.2d at 1089.  Under the Carmack Amendment, liability-limitation clauses similarly allow lower shipping rates for the shipper and avoidance of unforeseeable risks for the carrier, setting a consistent and predictable national standard. *Hill Const. Corp. v. American Airlines, Inc.*, 996 F.2d 1315, 1317 (1st Cir. 1993).  Such clauses also permit shippers of valuable items to choose between paying an insurance premium to the carrier and obtaining insurance that could be less expensive on

13

their own. *Id.* The courts recognize that the purposes of limiting liability under the Carmack

Amendment or the Warsaw Convention would be frustrated if these limits did not extend to

subcontractors of contracting carriers.

Hyundai argues that "shipping contracts purporting to grant immunity from, or

limitation of, liability must be strictly construed and limited to intended beneficiaries." *St.*

*Paul Fire & Marine Ins., Co. v. Schneider Nat'l Carriers, Inc.*, No. 03-5197, 2006 WL

522455 at *7 (S.D.N.Y. Mar. 3, 2006) (quoting *Toyomenka, Inc. v. S.S. Tosaharu Maru*, 523

F.2d 518, 521 (2d Cir. 1975). The liability limitation does not extend to Space City, Hyundai

argues, because none of the contractual provisions address the liability of any entity other

than Contractors Cargo and none extends the benefits of limited liability to any general class

or description of third parties. (Docket Entry No. 39). In *Schneider*, the bill of lading limited

the carrier's liability but did not mention limiting the liability of any other party. 2006 WL

522455 at *2. The court applied a third-party-beneficiary contract analysis to conclude that

the subcontractor's liability was not limited by the bill of lading's terms. *Id.* at *8. The

subcontractor was not a party to the original bill of lading and there was no evidence that the

shipper and carrier intended to benefit the subcontractor when executing the bill. *Id.*

Hyundai argues that it did not intend to limit the liability of any subcontractor, including

Space City, when it signed the shipment contract with Contractors Cargo.

Hyundai's reliance on *Schneider* is misplaced. The Fifth Circuit has declared that the

Carmack Amendment does not require a specific clause extending liability limitation to

14

another carrier. *Pegasus Transair, Inc. v. Carrera Transport, Inc.*, No. 02-20631, 2003 WL 342258 (5th Cir. Jan. 28, 2003). In *Pegasus Transair*, the carrier, Pegasus, argued that the limitation of liability provision in its bill of lading did not limit Carrera's liability for loss or damage to the freight Carrera transported under that bill because it contained no *Himalaya* clause. *Id.* at *1. A *Himalaya* clause extends liability limitations to downstream parties including servants, agents, and subcontractors. Because the Carmack Amendment "anticipates multiple carriers operating under one bill of lading," the court rejected this argument, finding that "[o]n its face, the Carmack Amendment requires no Himalaya clause for liability to be limited to all carriers carrying under a particular bill of lading." *Id.* Contractors Cargo did not have to include a clause extending the liability limitation to Space City specifically, or to subcontractors in general, for Space City, Contractors Cargo's subcontractor, to benefit from the limited liability provision in Contractors Cargo's standard terms and conditions. Hyundai is bound by the limited liability provision because it gained the benefit of Contractors Cargo's rates and decided not to opt out of the release value, but instead obtained separate insurance. *See Toppan*, 2007 WL 173904 at *3 (finding that "[having gained the benefit of the contract, Plaintiff should be bound by the provisions governing [carrier's] limited liability").

The shipment rates Contractors Cargo offered Hyundai were based on the limitation on liability. The limit on Contractors Cargo's liability extends to Space City as a matter of law.

## IV.    Conclusion

This court grants Space City's motion for partial summary judgment.  Space City's

liability to Hyundai is limited to $100,000.00.

SIGNED on September 5, 2008, at Houston, Texas.

_____

Lee H. Rosenthal

United States District Judge

16